IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO.  16-198 |
| MARC FOX | : | |

### UNITED STATES' SENTENCING MEMORANDUM

Defendant Marc Fox, after being fired as an employee of UGI Utilities (UGI), accessed UGI's computers without authorization and changed the way emergency telephone calls to UGI were routed, significantly slowing the answering time for these critical calls.  By intentionally delaying UGI's responses to emergency calls, such as those reporting natural gas leaks, Fox created a situation which could have resulted – but fortunately did not result–in a gas leak-related accident.   Fox's actions caused a threat to public health and safety.  In addition, investigating and correcting this damage to UGI's computer cost UGI more than $30,000.  For this conduct, as supported by the reasons provided below, the government recommends a guideline sentence. The advisory guideline sentencing range here is 10-16 months of incarceration, of which a portion – up to half -- may be ordered served by alternative confinement.

The Third Circuit has set forth a three-step process which the district courts must follow in compliance with the Supreme Court's ruling in *United States v. Booker*, 543 U.S. 220 (2005):

> (1) Courts must continue to calculate a defendant's Guidelines sentence precisely as they would have before *Booker*.
>
> (2) In doing so, they must formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and take into account our Circuit's pre-*Booker* case law, which continues to have advisory force.

>(3) Finally, they are to exercise their discretion by considering the relevant § 3553(a) factors in setting the sentence they impose regardless whether it varies from the sentence calculated under the Guidelines.

*United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006) (quotation marks, brackets, and citations omitted) (citing *United States v. King*, 454 F.3d 187, 194, 196 (3d Cir. 2006).

At the third step of the sentencing process, the Court must consider the advisory guideline range along with all the pertinent considerations of sentencing outlined in 18 U.S.C. § 3553(a) in determining the final sentence.  "The record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it."  *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006) (citations omitted).

The government explains below its view of the proper consideration in this case of the advisory guideline range and of the Section 3553(a) factors, which support a within-guideline sentence in this case.

I.     **BACKGROUND**

On June 24, 2016, defendant Fox pleaded guilty to one count of intentionally causing damage to UGI's computer, in violation of 18 U.S.C. § 1030(a)(5)(A), arising from the defendant accessing UGI's computer without authorization and changing the way that emergency calls were routed for responses.   At the guilty plea hearing, Fox admitted that he used computer access authority which he was not permitted to use, after he was fired, to access the UGI computer which controlled how emergency calls were routed for response.

At that hearing, Fox agreed that the facts set forth in the government's factual basis statement were true. On September 11, 2015, after UGI terminated Fox's employment, but before UGI cut off his computer access, Marc Fox used his UGI account to change the password of a different UGI employee to the computer which handled the call management system. On September 14, 2015, Fox used that employee's account to give administrative rights to a third account on that system. On September 16, 2015, Fox used the third account to change the password of the account of a different former UGI employee.

On October 2, 2015, Fox accessed UGI's call center call routing control system using this former employee's account. While connected, the defendant changed call routing instructions for two "call flows," that is, two instructions to the system about how emergency calls should be routed. These changes to the "call flows" slowed the answering of some emergency calls during weekend time periods. Call center employees noticed that calls were not being properly routed, and the answering of some emergency calls were delayed. UGI did not discover the cause of these slowed responses, that is, the changes to the "call flows," until approximately October 14, 2015. All of these instances of Fox's access to the UGI computers were without authorization. Because the October 2nd damage delayed response to emergency calls, these actions caused a threat to public health and safety.

UGI and the company that provides the internet-based call flow control service spent time and resources investigating the changes to the call flows and fixing the damage caused by Fox. UGI expended $30,829 in reasonable costs, both for its own time and in paying for the extra work of the service provider, to assess and repair the damage that Fox caused.

II. **SENTENCING CALCULATION**

A. **Statutory Maximum Sentence**.

The maximum sentence that may be imposed on the defendant is 10 years imprisonment, 3 years of supervised release, a $250,000 fine, restitution, forfeiture, a $100 special assessment.

B. **Sentencing Guidelines Calculation**.

The Probation Office correctly calculated the defendant's advisory guideline range as follows:

| | | |
|---|---|---|
| 2B1.1 | 6 | base offense |
| 2B1.1(b)(1)(C) | +4 | increase for intended loss ($15,000 to $40,000) |
| 2B1.1(b)(18)(A)(ii) | +4 | offense under section 1030(a)(5)(A) |
| 3E1.1(a) | -2 | acceptance of responsibility |
| | 12 | Final offense level |

PSR ¶¶ 24-33.

The probation officer correctly found that Fox has no criminal history points and is in Criminal History Category I. PSR ¶ 36-37. This results in a final Guideline sentencing range of (12, I) = 10-16 months. PSR ¶ 75.

III. **ANALYSIS**

A thorough consideration of all of the sentencing factors set forth in 18 U.S.C. § 3553(a) suggests that the most appropriate sentence is one called for by the advisory guidelines for a sentencing range of 10-16 months. The options under the guidelines for this sentencing range include a period of incarceration of between 10-16 months, or as an alternative the sentence may be ordered served by up to half of it being done in alternative confinement such as community confinement or home detention. PSR ¶75.

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark."

*Gall v. United States*, 552 U.S. 38, 49 (2007).  "These requirements mean that '[i]n the usual sentencing, . . . the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range." *Peugh v. United States*, 133 S. Ct. 2072, 2083 (2013) (quoting *Freeman v. United States*, 131 S. Ct. 2685, 2692 (2011) (plurality opinion); ellipsis in original).  "Common sense indicates that in general, this system will steer district courts to more within-Guidelines sentences." *Peugh*, 133 S. Ct. at 2084.  "The federal system adopts procedural measures intended to make the Guidelines the lodestone of sentencing." *Id.*

In addition, this Court must also consider all of the sentencing considerations set forth in Section 3553(a).  Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.  18 U.S.C. § 3553(a).

    A.    **Consideration of the 3553(a) Factors**

        1.  Nature and Circumstances of the Offense

The defendant committed a serious offense.  Fox blatantly accessed UGI's computer after he was fired and had no right to do so.  He acted immediately, within hours of being terminated, in order to take advantage of the lag time between his being fired and when his computer

credentials were turned off.  When he entered the system without authorization, he then changed other account passwords in order to ensure that he would be able to continue to access UGI's computers – without authorization – through one of these other accounts after the inevitable termination of his own computer credentials.

These steps show that Fox was planning from the beginning – from the very time that he was fired – to do damage to UGI's computers and disrupt its operation.  Fox took several actions over several weeks to move from one account to another, each time burying his unauthorized access under several layers of changes which he knew would not easily or quickly be detected.  Fox intentionally accessed and co-opted the accounts of an employee who did not use the call routing system, an account associated with a display board in the building, and the account of a former employee, to ensure that he would still be able to enter the UGI computers to impose the disruption he had in mind, and to do so at a time of his choosing.

Finally, on October 2, 2015, he acted.  On that date he changed the "call flows" for emergency calls.  He changed the call flows so that on weekends calls would not be answered by the operators to whom they were supposed to be routed, but were routed to different operators who became backlogged with calls which delayed the response to the emergency calls.  Further, he made this change only on weekends when it would be less likely to be detected.  These emergency calls were supposed to be answered within 30 seconds, but some were delayed to as much as six minutes.

UGI eventually recognized that there was a problem with the emergency call responses, but did not discover the cause of these delays until October 14, 2015.  Fortunately, these delayed responses did not result in any gas leak-related accidents.  However, when there is a serious gas

leak, a fast response is essential, and Fox's actions could have caused damage.  His actions therefore caused a threat to public health and safety.

These action show a deliberate, thought-out and planned disruption to UGI's computers, not just a spur-of-the-moment reaction to being fired.  Fox's actions are made far more serious than a simple and annoying minor computer disruption because they posed a true and immediate threat to public health and safety.   Fox knew the call flow system intimately because that was where he worked while at UGI.  He chose to modify the most damaging portion of the call flows that he could change – one which caused a significant threat to the public.  Further, his actions also cost money to UGI, as it had to pay more than $30,000 to identify and fix the problem.

A sentence of incarceration of between 10 and 16 months, or a sentence of at least 5 months custody combined with a period of alternative confinement, will reflect the seriousness of the offense.  Such a sentence would also be consistent with the policies of the Sentencing Guidelines.

2. Defendant's History and Characteristics

The PSR details Fox's background, which includes no prior criminal history.  He is married with three children.  However, this family situation did not impede Fox's desire to retaliate against UGI.  The Court should consider his current circumstances, but also weigh the seriousness of the offense in imposing sentence.

3. Deterrence and Protection of the Public

Fox's conduct was clearly wrong and illegal, but this illegality, which must have been apparent to him, did not deter him from attacking UGI's computer system as he did.  The severity of the sentence imposed on Fox should reflect the seriousness of the offense, and be significant enough to deter him from committing offenses in the future.   A sentence of

incarceration within the guideline range of 10-16 months will impress Fox with the seriousness of this offense and deter future criminal conduct, and promote his respect for the law.  Although less severe, the more lenient sentence allowing him to complete up to half his sentence with alternative confinement will also provide some measure of deterrence.

      A sentence that provides for deterrence to any commission of this or other crimes is important to impress on Fox the obligation not to reoffend.  But it is also important for the purpose of general deterrence, that is, to demonstrate to others who may consider committing a similar crime that there are real and serious consequences to doing so.  A sentence including incarceration will help to accomplish this legitimate goal of sentencing.

      For these reasons as well, the government recommends a guideline sentence.

           4.   Avoiding Disparity of Sentences

      One purpose of the creation of the sentencing guidelines was to reduce the disparities in sentences of similarly situated defendants.  U.S.S.G. §1A1.3.  Here, the offense level reflects the severity of Fox's crime, and accounts for the significance of the violation of §1030(a)(5)(A) as a felony, which is based in part on the threat to public health and safety, and which has a +4 level increase in the offense level.  The guideline calculation takes into account the fact that he has accepted responsibility for his actions in allowing a -2 level adjustment for that purpose.  The guideline calculation also takes into account the fact that Fox has no prior criminal history by assigning him to Criminal History Category I.  The resulting guideline sentencing range of 10-16 months reflects in real terms an appropriate sentence.

      The guideline further recognize room for leniency at this level of guidelines by allowing for up to half of the period of incarceration to be served in alternative confinement, such as home detention or community confinement.  There are no substantial factors here to take Fox outside

this range in either direction – he is within the "mine-run" of offenders of this type. Given all of these factors, a sentence called for by these advisory guidelines is appropriate and will serve to avoid disparity in sentencing with similarly situated defendants.

5. Restitution

The defendant has agreed in his plea agreement to pay restitution of $30,829 to UGI to repay them for their costs in responding to the damage that he caused. The Court should order this restitution as part of the sentence and include it in the judgment.[1]

6. Fine

Given defendant's financial situation as reported in the presentence report, and the restitution order that will be imposed, the government agrees that Fox does not have the financial capability to pay a fine in addition to the restitution that he will pay. The government recommends that no fine be imposed.

7. Other

There is no need for any particular educational or vocational training, medical care, or other correctional treatment to be considered as part of this sentence. There is no property being forfeited in this case.

---

1 The government will provide the Court's deputy clerk with the address to whom restitution payments should be sent when received from the defendant by the Clerk's office.

**IV. CONCLUSION**

For these reasons, the government recommends that the Court impose a sentence within the advisory guideline range of 10-16 months, or a sentence which allows half of this sentence to be served by alternative confinement. The government also recommends that the Court impose an order of restitution $30,829 payable to UGI.

                                          Respectfully submitted,

                                          ZANE DAVID MEMEGER
                                          United States Attorney

                                          */s Albert S. Glenn*
                                          ALBERT S. GLENN
                                          Assistant United States Attorney

Dated: September 14, 2016

## CERTIFICATE OF SERVICE

I hereby certify that this Sentencing Memorandum has been served on the Filing User identified below through the Electronic Case Filing (ECF) system, and by U.S. Mail to the addresses below:

Mr. Curtis E. Barnes
Attorney at Law
530 Walnut St.
Reading, PA  19601

Christopher L. Boyer
United States Probation Officer
U.S. Probation Office
600 Arch Street, Suite 2400
Philadelphia, PA  19106-1616

/s Albert S. Glenn
ALBERT S. GLENN
Assistant United States Attorney

DATED:   September 14, 2016